**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| O'NEILL, | * | |
| | * | |
| PLAINTIFF, | * | |
| | * | |
| v. | * | No. 1:25-cv-04228-LKG |
| | * | |
| RUDD, | * | |
| | * | |
| DEFENDANT. | * | |

******

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff, who identifies as a transgender woman, works for the National Security Agency (NSA) at Fort Meade, Maryland. ECF 1 at ¶¶ 1–2. She allegedly experienced changes in the workplace after President Trump took office and implemented an executive order aimed at dismantling "gender ideology." *See, e.g.*, ECF 1 at ¶ 8. Plaintiff's allegations boil down to the belief that because NSA refused to defy Presidential Executive Orders relating to gender ideology, she experienced hostile workplace harassment based on her status as a transgender person. Title VII does not extend this far. First, the allegedly harassing actions here are not based on sex. Second, the allegedly harassing actions are not severe or pervasive enough to constitute hostile work environment.

## II. BACKGROUND FACTS

On January 20, 2025, the President implemented an Executive Order called "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government." Exec. Order No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025). The Order instructed federal agencies to take steps to eliminate "gender ideology" in federal workplaces. *Id.* These

changes took the form of removing references to “gender” from internal policies, removing gender ideology language from outward-facing media, removing gender-based pronouns from emails, and addressing “privacy in intimate spaces.” *Id.* The Department of Defense is required to follow all Presidential Executive Orders. ECF 37-2 at 7.

Shortly after the Executive Order was issued, the Office of Personnel Management issued a memorandum to “each agency head” requiring agencies to implement the executive order. ECF 1 at ¶ 42. To comply with the Executive Order, NSA restricted pronoun usage in email signatures to pronouns aligned with sex, published newsletters explaining several of the new rules, replaced Equal Employment Opportunity (EEO) signage to remove transgender status and gender identity as protected characteristics, removed the ability to change an employee’s “display name” to something other than legal name, and required NSA personnel to use intimate spaces that aligned with sex and not gender identity. ECF 1 at ¶¶ 47–57.

Plaintiff filed a Formal Complaint of Discrimination on May 8, 2025. On September 25, 2025, the Agency issued a Final Agency Decision (FAD) dismissing the complaint on three grounds. ECF 37-2 at 5–7. First, it found that many allegations were based on non-Agency actions, including guidance from the Office of Personnel Management (OPM) and the Department of Defense, as well as a tweet by Defense Secretary Pete Hegseth. *Id.* at 5. Second, it found that transgender status and gender identity are not protected classes in themselves, separate from sex. *Id.* at 5–6. Finally, it found that Plaintiff did not establish “harm or loss with respect to a term, condition, or privilege of employment for which there is a remedy.” *Id.* at 6–7. The FAD noted that “the Agency is required to follow all Executive Orders issued by the President” and has no ability to retract policies issued to comply the with Executive Order. *Id.* at 7.

## III. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) serves to test the legal sufficiency of the complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] their claims across the line from conceivable to plausible." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although courts must generally accept as true the allegations of a complaint, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679) (internal quotation marks omitted).

## IV. ARGUMENT

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 63 (1986) (quoting 42 U.S.C. § 2000e-2(a)(1)). A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment. *Id.* at 66. A Title VII hostile work environment claim requires a plaintiff to establish four elements: "that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Prods., Inc.*, 335

F.3d 325, 331 (4th Cir. 2003). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78 (1998) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

Here, Plaintiff fails to plead two elements – that she experienced severe or pervasive discrimination based on sex.

**A. The allegedly hostile workplace actions are not based on sex.**

None of the allegedly hostile actions are based on sex. Conduct that is "based on sex" requires showing "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Ocheltree*, 335 F.3d at 331. The Supreme Court has issued two key decisions relating to alleged discrimination against transgender individuals under Title VII, and both must be read together. First, in *Bostock v. Clayton County*, the Supreme Court held in a discriminatory termination case, "For an employer to discriminate against employees for being homosexual or transgender, the employer must intentionally discriminate against individual men and women in part because of sex." 590 U.S. 644, 662 (2020). The Court then applied this holding to an allegedly discriminatory broadly-applicable policy in *Untied States v. Skrmetti*. 605 U.S 495, 520–21 (2025).

In *Skrmetti*, the Court applied the *Bostock* test, in which courts should test for "based on sex" by inverting biological sex while keeping all other facts the same to see if the policy would apply differently. *Id*. *See also*, *Bostock*, 590 U.S. at 656 ("[To assess but-for causation,] change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause"). In *Skrmetti*, the Supreme Court considered an equal protection challenge statute that prohibited health care providers from performing gender-affirming surgery or administering hormones or puberty

blockers to transgender minors. 605 U.S. at 505–506. The Court reasoned that, even following *Bostock*, it is a change in diagnosis (to or from gender dysphoria) that changes application of the statute, not a change of sex. *Id.* at 520–522. The Eleventh Circuit applied *Skrmetti* to the Title VII context, considering an employer health plan that excluded sex change surgery-related expenses. *Lange v. Houston County, Georgia*, 152 F.4th 1245, 1248 (11th Cir. 2025). That court held that the insurance policy would forbid sex change services regardless of whether the plaintiff were "a natal man" or "a natal woman," and therefore did not run afoul of Title VII. *Id.* at 1252.

Applying the same logic here, the employment actions in question do not change if sex is reversed. Termination of agency programs, resource groups, and outward-facing media about gender ideology applies to everyone regardless of whether sex is male or female. Removal of pronoun prompts from emails also applies to everyone regardless of sex. Changing forms, policies, and documents to use the word "sex" and not "gender" similarly applies the same to everyone regardless of sex. And the requirement to use a bathroom aligning with sex does not change if sex is reversed – both sexes are expected to use the bathroom aligning with sex.[1] Thus, there is no employer action "based on sex" that is subject to Title VII liability.

### B. Plaintiff's allegations do not rise to the "severe or pervasive" level required by law.

Nor is the application of these policies the kind of "severe or pervasive" behavior required to establish hostile work environment. A prima facie case of hostile work environment harassment requires a showing that "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). The Supreme Court cautioned that these standards are "sufficiently demanding to ensure

[1] *But cf.*, *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616–17 (in Title IX context, defining transgender bathroom policy not as requiring use of bathroom corresponding to sex but as "exclud[ing] [plaintiff] from the boys bathrooms," which made sex a but-for cause of the exclusion).

that Title VII does not become a general civility code," and should "filter out complaints attacking the ordinary tribulations of the workplace." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (internal quotations omitted). "[C]omplaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor are not actionable under Title VII." *EEOC v. Sunbelt Rentals, Inc*., 521 F.3d 306, 315 (4th Cir. 2008) (internal quotations and citations removed) (cleaned up). To determine whether conduct is severe or pervasive, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993).

Enforcing broadly applicable policies is not harassment. *Hamel v. Bd. of Educ. of Harford Cnty.*, No. CV JKB-16-2876, 2018 WL 1453335, at *6 (D. Md. Mar. 23, 2018). In *Hamel*, a supervisor "adopted and reinforced policies" requiring employees to follow certain workplace rules. *Id.* Judge Bredar found that "these policies are commonsense measures, not harassment" even if the rule enforcement "caused Plaintiff substantial emotional distress." *Id.* (internal quotations omitted). Additionally, where an employee can still "perform her job duties as a result of her working environment," conduct may not be severe or pervasive. *Edmonson v. Potter*, 118 F. App'x 726, 730 (4th Cir. 2004). *See also Hamel*, 2018 WL 1453335, at *10 ("Plaintiff repeatedly stated that she could perform all functions of her job in spite of the policies and behavior she now contends created a hostile work environment.").

Here, NSA implemented policy changes to comply with Presidential Executive Orders. ECF 37-2 at 7 (FAD) (noting "the Agency is required to follow all Executive Orders Issued by the President, as well as [Department of Defense] DoD implementing guidance"). Plaintiff does not

allege that any of NSA's actions extended beyond the reach of the Executive Orders. Indeed, Plaintiff does not even allege that NSA actually enforced any of the pronoun or bathroom policies against her. *See, e.g.*, ECF 1 at ¶ 65 ("Ms. O'Neill is afraid she will face discipline if she uses the women's restroom."). The practical impact on Plaintiff's work life, according to the Complaint, was that Plaintiff dreaded reading a newsletter, worried about being misgendered, and opted to use single-occupancy bathrooms instead of men's rooms, which is sometimes inconvenient. ECF 1 at ¶¶ 60, 62, 65, 67. Plaintiff does not even allege that she *was* misgendered as a result of the NSA policies. *See* ECF 1 at ¶ 62 ("Since Ms. O'Neill has stopped using pronouns in her signature block . . . she worries that there is now a higher chance of being misgendered."). In fact, the Complaint does not cite to a single supervisory action against Plaintiff at all.

These facts fall short of the "severe and pervasive" standard required to establish harassment, necessitating dismissal.

## V. <u>CONCLUSION</u>

For these reasons, Plaintiff fails to state a claim for hostile workplace harassment stemming from the Gender Ideology Executive Orders.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By: /s/
Molissa H. Farber (802255)
Assistant United States Attorney
36 S. Charles St., 4th Floor
Baltimore, Maryland 21201
410-209-4862
Molissa.Farber@usdoj.gov

*Counsel for Defendant*